**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marlene Lori Dickson, | No. CV-18-01024-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Marlene Lori Dickson's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, "Pl.'s Br.") and Defendant Social Security Administration Commissioner's Opposition (Doc. 19, "Def.'s Br."), and Plaintiff's Reply (Doc. 20, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now affirms the Administrative Law Judge's decision (R. at 15–34) as upheld by the Appeals Council (R. at 1–3).

**I.     BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on May 8, 2014 for a period of disability beginning April 17, 2014. (R. at 15.) Plaintiff's claim was denied initially on September 22, 2014 (R. at 57), and on reconsideration on February 2, 2015 (R. at 74). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on October 18, 2016. (R. at 15.) On March 9, 2017, the ALJ denied Plaintiff's Application.

(R. at 34.) On February 7, 2018, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–3.) On April 3, 2018, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: major depressive disorder; general anxiety disorder; hypertension; gastroesophageal reflux disease; and hearing loss. (R. at 17–18.)

Ultimately, the ALJ determined that Plaintiff "[did] not have an impairment or combination of impairments that [met] or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 18.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels"—with certain nonexertional limitations—in a role such as janitor or housekeeper. (R. at 20, 33.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

1 conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the opinions of Plaintiff's treating psychologist and psychiatrist and in weighing the opinions of the state agency examiners; and (2) the ALJ erred by rejecting Plaintiff's symptom testimony. (Pl.'s Br. at 1–2.)

**A. The ALJ Did Not Err in Discrediting the Opinions of Plaintiff's Treating Psychologist and Psychiatrist and Weighing the Opinions of the State**

**Agency Medical Examiners**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ cited specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Plaintiff's treating psychologist, Dr. Froehlich, and Plaintiff's treating psychiatrist, Dr. Sherman. As a result of Plaintiff's impairments, Drs. Froehlich and Sherman found Plaintiff would be off task more than 30% of the time during an eight-hour workday, miss five or more days of work per month, and be less than half as efficient as an average worker. (R. at 29.) The ALJ concluded their opinions were inconsistent with the medical evidence (R. at 29) and, in support, cited evidence that Plaintiff demonstrated the following characteristics in the relevant period: cooperative behavior; full orientation; normal speech; appropriate grooming; intact memory; logical thought processes; no paranoia; no flight of ideas; sequential and logical thought content; no delusions; good problem solving ability; no auditory or visual hallucinations; good knowledge of current events; tight associations; no suicidal ideation;

no acute distress; good comprehension; and the ability to read and write a sentence and copy a design. (R. at 292–96, 299–313, 339–51, 367–73, 575–96.) Collectively, these characteristics would allow Plaintiff to sustain full-time work. Accordingly, the ALJ did not err in discrediting the opinions of Drs. Froehlich and Sherman.

Likewise, the ALJ did not err in weighting the opinions of the state agency medical examiners. "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 20008). "[T]he [ALJ]'s findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the [ALJ]'s decision." *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted). Here, although Plaintiff argues for an alternative interpretation of the evidence (Pl.'s Br. at 18–21), the ALJ supported each of his findings regarding the opinions of the state agency medical examiners by citing specific evidence in the record (R. at 29–30). Accordingly, this Court must uphold those findings.

### B. The ALJ Did Not Err in Rejecting Plaintiff's Symptom Testimony

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1281)). The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

Here, although Plaintiff alleged that she was unable to work as a result of her mental impairments, the ALJ found that the alleged limiting effects of Plaintiff's mental symptoms were inconsistent with Plaintiff's daily activities and psychiatric records. (R. at 28.) Specifically, the ALJ noted that Plaintiff reported that she engaged in the following daily

activities: shopped in stores; watched television; took care of dogs and cats; prepared meals; washed dishes; laundry; drove short distances alone; went out alone; went to yard sales; used Facebook; spent time with family; showered independently; used a computer; took her son to his work; babysat her grandchild; cared for personal hygiene; made her bed; and used public transportation. (R. at 28.) And, the alleged impairments were inconsistent with the characteristics (listed above) Plaintiff displayed over the course of the relevant period. (R. at 28–29.) Accordingly, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms.

## IV. CONCLUSION

Because Plaintiff raises no error on the part of the ALJ, the Court need not consider whether this matter should be remanded for further consideration or computation of benefits. Based on the reasons explained above, the Court affirms the denial of Plaintiff's benefits. Accordingly,

**IT IS ORDERED** affirming the March 9, 2017 decision of the ALJ (R. at 15–34), as upheld by the Appeals Council on February 7, 2018 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 4th day of September, 2019.

Honorable Diane J. Humetewa
United States District Judge